STATE OF NORTH CAROLINA v. CHARLES SILSBY FEARING

No. 791SC1197

(Filed 19 August 1980)

1. **Automobiles § 131– hit and run driving – absence of fault no defense**

   A driver violates G.S. 20-166(a) if he does not stop immediately at the scene of an accident, and the absence of fault on the part of the driver is not a defense to the charge of failing to stop at the scene of an accident.

2. **Automobiles § 131– hit and run driving – elements**

   To support a verdict of guilty under G.S. 20-166(a), the State must prove that defendant was driving the automobile involved in the accident at the time it occurred; the vehicle defendant was driving came into contact with another person resulting in injury or death; and defendant, knowing he had struck a victim, failed to stop immediately at the scene.

3. **Automobiles § 131.1– hit and run driving – defendant's knowledge that he hit person – sufficiency of evidence**

   Evidence was sufficient to show that defendant had knowledge that he had been involved in an accident resulting in injury or death to some person where the evidence tended to show that defendant was aware of the tremendous damage to his vehicle resulting from something coming into contact with his automobile on the highway; the damage indicated that whatever defendant hit came into contact with his automobile at three points; when the windshield "exploded" the inside dashboard of the automobile was smashed; defendant told an officer who investigated the accident scene the next day that he may have hit a signpost with his automobile the night before and that he had struck something as he was driving in the general area where deceased's body was found; he knew he had hit something but did not stop to investigate because of his concern for a sick, screaming passenger in his backseat; and defendant, while looking for the deputy sheriff at the county health clinic, saw that a woman was being examined and remarked, "Maybe we hit her."

4. **Automobiles § 131.1– hit and run driving – defendant's exculpatory statements – dismissal not required**

   In a prosecution for hit and run and death by vehicle, there was no merit to defendant's contention that certain exculpatory statements made by him to officers, that he had no knowledge that he had hit another person, compel-

led the granting of his motion to dismiss, since the State offered plenary evidence to contradict defendant's statements and to permit a jury to find that he did have such knowledge.

**5. Automobiles § 113.1– death by vehicle – sufficiency of evidence**

Evidence was sufficient for the jury in a prosecution for death by vehicle under G.S. 20-144.4 where the evidence tended to show that defendant was driving his car at 8:00 p.m. at 30-40 mph; from the area where deceased's body was found and for at least 175 feet in the direction from which defendant was coming there were no trees or other obstructions; it was stipulated that deceased came into contact with defendant's vehicle; at the time the collision occurred defendant had reached down under his seat, gotten a towel, and was handing the towel to a passenger in the backseat; and the jury could infer from the evidence that defendant should have been aware of deceased's presence on or around the highway, and should have been able to take emergency measures to prevent hitting a person on the paved portion of the highway.

**6. Automobiles § 131.2– hit and run driving – sick passenger – instruction on justification and excuse not required**

In a prosecution for hit and run and death by vehicle, evidence that there was a sick passenger in defendant's vehicle did not warrant a separate instruction on legal justification and excuse.

APPEAL by defendant from *Strickland, Judge.* Judgment entered 29 June 1979 in Superior Court, CHOWAN County. Heard in the Court of Appeals 12 May 1980.

Defendant was charged in separate bills of indictment with failing to stop his automobile at the scene of an accident (hit and run) under G.S. 20-166(a) and death by vehicle under G.S. 20-141.4. The two charges were consolidated for trial, and defendant was convicted of both offenses. Defendant was sentenced to prison terms of not more than three years for hit and run, and not more than one year for the offense of death by vehicle, to run concurrently with the prior sentence.

Evidence presented at trial tended to prove the following: On 19 February 1979, Cloise Creef, the deceased, was 87 years old and lived in an apartment along Highway 64-264 in Dare County near Manteo, North Carolina. Between 6:30 and 7:00 p.m. on that day, Creef left his apartment and was not seen again until he was found dead the next day in a ditch along the highway. Creef was known to have a considerable drinking habit, and an autopsy revealed a blood-alcohol level of .29%.

On 20 February 1979, at about 2:00 p.m., Trooper J.W. Bonner of the North Carolina Highway Patrol investigated the area in which Creef's body was found. The body was on the north side of Highway 64-264 and about 10 feet from the road. Creef had sustained injuries to the head and other parts of the body, and there were many cuts and bruises throughout, including a severing of the cervical spine in four places. From his measurements, the paved portion of the highway at that point was 22 feet wide, with solid white lines marking each edge of the pavement and broken lines indicating the middle of the road. Defendant lived only about three-fourths of a mile from the scene of the accident.

While Trooper Bonner investigated the incident, defendant approached the officer and requested that he examine a sign post which defendant said he may have hit with his automobile the night before. Defendant told Trooper Bonner that the previous night he had struck something as he was driving along Highway 64-264 in the general area where Creef's body was found. Afterwards, defendant, Trooper Bonner and another patrolman travelled to an automobile body repair shop where defendant had taken the automobile for repairs. En route to the body shop, defendant, after being advised of his *Miranda* rights, related that on the previous evening he had been in Manteo at Fernando's Alehouse, of which he was the proprietor, with some friends; that he left the Alehouse and drove west on Highway 64-264; that he was travelling about 35-40 miles per hour and was "not driving erratic;" that he did not run off the road and was driving in a "straight line;" that as he drove, a girl in the back seat became sick, and he "reached under the seat and got a towel and turned around and was handing this towel to her when all of a sudden the windshield exploded."

On cross-examination, Trooper Bonner stated that he "never found any indication that the vehicle had left the paved portion of the highway or found any indication that the vehicle had crossed the center of the highway." There was, in addition, no indication "that the vehicle was traveling at an excessive speed and I found no brake marks, or tire marks." Defendant admitted that he had two glasses of wine to drink before the incident, but there was nothing to indicate that defendant was

under the influence when he drove or that his driving was in any way affected by the wine. When asked if he stopped to investigate the cause of this damage to the car, defendant replied, "No, the girl in the back seat started screaming at that time, and I continued on towards my house." In addition, defendant stated that he did not even slow down, because at that time his main concern was the girl who was sick and screaming in the back seat, and he thought it was best to get her to his house. It does appear, however, that defendant did return to the vicinity where the incident occurred later that night in an effort to discover what he had hit. Defendant stated that "when he got back to where the windshield had exploded, [he] drove up and down the highway there several times looking around to see if [he] could see anything."

Examination of the automobile involved in the incident revealed that the right half of the windshield was missing; there was a dent in the hood "about the size of a basketball," "the front grille was bent; the dashboard on the inside of the automobile was torn; and a wooden strip located close to the windshield on the inside of the car was broken." Broken glass was scattered on the floor below the right passenger's seat in both the front and rear of the automobile. Examination of the windshield and glass fragments therefrom revealed the presence of human blood, although not of a sufficient quantity to determine the type. Similar glass fragments were taken from Creef's body when it was examined at the local morgue. In addition, paint found among Creef's clothes matched paint samples taken from defendant's vehicle. Further examination of the vehicle revealed that there were three points of impact on the automobile: the front bumper, the front portion of the hood; and the windshield. The windshield was apparently broken by some force "to the extent that the inside of the dash was dented." There was a hole in the windshield with a diameter of approximately four to six inches. There was an abraded area on the cowl near the right windshield wiper blade. This was immediately in front of the break in the windshield. Immediately inside the area where the break occurred there was a wooden piece of molding which was broken. Beneath the wooden strip of molding the vinyl material on the dash was broken and cracked, and immediately beneath this, the metal portion of the dash

was dented. The vehicle appeared to have been washed in the areas where the damage was located. Several photographs were admitted into evidence as exhibits illustrating these damages. The jury was permitted to examine the automobile outside the courtroom.

During the course of the trial, the State and defendant stipulated that the body of Cloise Creef came into contact with the front end of the automobile driven by defendant on 19 February 1979.

Further evidence revealed that defendant visited the health clinic in Dare County looking for the Dare County Deputy Sheriff. Upon arriving at the clinic defendant saw that a woman was being examined and remarked, "Maybe we hit her."

After the trial, and after notice of appeal was given, defendant filed a motion for appropriate relief based, in part, on the State's refusal to provide defendant with certain exculpatory information. From the judgment entered upon the verdicts and the trial court's denial of his motion for appropriate relief, defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Elizabeth C. Bunting, for the State.*

*Charles Aycock III, and Stewart and Hayes, by David K. Stewart and Brenton D. Adams, for defendant appellant.*

MORRIS, Chief Judge.

By assignements of error Nos. 15 and 38, defendant contends that the court improperly denied his motion to dismiss the charge of leaving the scene of an accident.

In determining the sufficiency of the evidence to go to the jury, all of the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference deducible therefrom. *State v. Lee,* 294 N.C. 299, 240 S.E. 2d 449 (1978). When so viewed, that evidence must be sufficient to permit a rational trier of fact to find guilt beyond a

reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979).

[1] G.S. 20-166(a), upon which defendant was charged and convicted, provides:

> The driver of any vehicle involved in an accident or collision resulting in injury or death to any person shall immediately stop such vehicle at the scene of such accident or collision, and any person violating this provision shall upon conviction be punished as provided in G.S. 20-182 [providing for punishment of from one to five years in prison and for fine of not less than $500.00, or both, with automatic revocation of defendant's operator's license].

The general purpose of this statute is to facilitate investigation of automobile accidents and to assure immediate aid to anyone injured by such collision. *State v. Smith*, 264 N.C. 575, 142 S.E. 2d 149 (1965). A driver violates this section if he does not stop immediately at the scene of the accident. *State v. Norris*, 26 N.C. App. 259, 215 S.E. 2d 875, *appeal dismissed*, 288 N.C. 249, 217 S.E. 2d 673 (1975), *cert. denied*, 423 U.S. 1073, 47 L. Ed. 2d 83, 96 S. Ct. 856 (1976). Furthermore, the absence of fault on the part of the driver is not a defense to the charge of failing to stop at the scene of an accident. *State v. Smith, supra.*

[2] To support a verdict of guilty under G.S. 20-166(a), the State must prove that defendant was driving the automobile involved in the accident at the time it occurred; that the vehicle defendant was driving came into contact with another person resulting in injury or death; and that defendant, knowing he had struck the victim, failed to stop immediately at the scene. *State v. Overman*, 257 N.C. 464, 125 S.E. 2d 920 (1962). Knowledge of the driver that his vehicle has been involved in an accident resulting in injury to a person is an essential element of this offense. *State v. Glover*, 270 N.C. 319, 154 S.E. 2d 305 (1967); *State v. Ray*, 229 N.C. 40, 47 S.E. 2d 494 (1948).

[3] In the present case, defendant argues that there was no evidence which showed that he had knowledge that he had been involved in an accident resulting in injury or death to some

person. We disagree. Without further detailing the evidence submitted at trial, we find that the evidence showed that defendant was aware of the tremendous damage to his vehicle resulting from something coming into contact with his automobile on the highway; that the damage to the automobile indicated that whatever defendant hit came into contact with his automobile at three points, and that when the windshield "exploded" the inside dashboard of the automobile was smashed. These facts, in addition to the circumstances surrounding defendant's statements and actions after the accident, support a reasonable inference that defendant knew he had been involved in an accident resulting in injury to a person, notwithstanding the fact that there may also be reasonable inferences to the contrary. *See State v. Glover, supra; State v. Smith,* 40 N.C. App. 72, 252 S.E. 2d 535 (1979).

[4] Defendant's contention that certain exculpatory statements made by him to officers, that he had no knowledge that he had hit another person, compel the granting of his motion to dismiss, is without merit. Although a defendant's exculpatory statements which exonerate a defendant, if offered by the State and not contradicted by other evidence, ordinarily compel nonsuit, *State v. Ray, supra,* the defendant's statement does not prevent the State from showing that the facts and circumstances were different. *State v. Freeman,* 31 N.C. App. 93, 228 S.E. 2d 516, *cert. denied,* 291 N.C. 449, 230 S.E. 2d 766 (1976); *State v. Glover, supra.* Here, the State offered plenary evidence to contradict defendant's statement that he had no knowledge, and to permit, although not compel, a jury to find that he did have such knowledge. Defendant's motion to dismiss the charge under G.S. 20-166(a) was, therefore, properly denied. By so holding, we also overrule defendant's thirty-ninth assignment of error that the court erred by failing to charge the jury on the effect of exculpatory statements made by the defendant which were offered by the State.

[5] Defendant next argues that the trial court should have dismissed the charge of death by vehicle under G.S. 20-141.4 because, according to defendant, there was no evidence which showed that defendant violated the statute cited in the indictment, or any other law, which would constitute the proximate

cause of Cloise Creef's death. The indictment of death by vehicle returned against defendant charged that he violated G.S. 20-174(e) in that he operated his automobile "without exercising due care to avoid colliding with a pedestrian upon the roadway, without giving warning by sounding horn when necessary, and without exercising proper precaution upon observing a confused and incapacitated person upon such roadway . . . ." This section is an adoption of the rule at common law that "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway." *Lewis v. Watson,* 229 N.C. 20, 26, 47 S.E. 2d 484, 488 (1948).

Under G.S. 20-174(e), a motorist has the duty, which is applicable to all motorists generally, to operate his vehicle at a reasonable rate of speed, keep a lookout for persons on or near the highway, decrease his speed when special hazards exist with respect to pedestrians, and give warning of his approach by sounding his horn if the circumstances warrant. *Morris v. Minix,* 4 N.C. App. 634, 167 S.E. 2d 494 (1969). In determining whether defendant breached his duty of care and in doing so violated G.S. 20-174(e), we must review the evidence presented under the standard for review of motions to dismiss previously discussed.

The evidence indicates that defendant was driving west on Highway 64-264 at about 8:00 p.m. at a rate of speed of 30-40 miles per hour. From the area where Creef's body was found and for at least 175 feet eastward, there were no trees or other obstructions along the northern side of the highway. A grassy shoulder about 10 feet wide bordered the road at that point. The ditch in which Creef was found ran along the northern edge of the shoulder. An open field occupied the immediate area beyond the ditch.

It was stipulated that Creef came into contact with defendant's vehicle. The point of impact, as determined from the damage to defendant's automobile, appeared to be the right front portion of the vehicle. Since there was no evidence tending to show that defendant's vehicle ever left the paved portion of the road, the inference is that the collision occurred on the paved portion of the westbound lane within several feet from

State v. Fearing

the shoulder of the road. At the time the collision occurred, defendant had reached down under his seat, gotten a towel, and was handing the towel to a passenger in the back seat of the automobile. At this point, defendant testified, the "windshield exploded."

Defendant strongly urges that there is no evidence that, at the time the incident occurred, he was violating a motor vehicle law either by speeding, by failing to sound his horn upon observing Creef in or about the highway, or by failing to do everything within his means to prevent the collision upon seeing Creef in the highway. Despite this argument, we conclude that when the evidence is reviewed in the light most favorable to the State, and the State is given the benefit of every reasonable inference to be drawn therefrom, the evidence is sufficient to permit a jury to find defendant guilty of failing to exercise due care in the operation of his vehicle. It is reasonable to infer from the evidence that defendant should have been aware of Creef's presence in or around the highway, and should have been able to take emergency measures to prevent hitting a person on the paved portion of the highway. Since the evidence is sufficient to permit conviction for a violation of G.S. 20-174(e), it follows that submission of the charge of death by vehicle based on a violation of that section was proper. In so holding, we add that the evidence permits a finding by the jury that defendant's collision with Creef was the proximate cause of Creef's death.

[6] Defendant further assigns error to the trial court's failure to charge the jury on the defense of justification and excuse, arguing that the presence of a sick and "hysterical" woman in the automobile is sufficient evidence to warrant such an instruction.

"The trial judge must charge the jury on all substantial and essential features of a case which arise upon the evidence, even when, as here, there is no special request for the instruction." *State v. Marsh,* 293 N.C. 353, 354, 237 S.E. 2d 745, 747 (1977). In his instructions to the jury on the charge of failing to stop at the scene of an accident, the court included the instruction that defendant's failure to stop must be "willful, that is, intentional

and without justification or excuse." *See* N.C.P.I. — Criminal 271.50. We find no evidence which would support the instruction for which defendant contends. Evidence that there was a sick passenger in defendant's vehicle does not warrant a separate instruction on legal justification and excuse. This assignment of error is overruled.

We have carefully examined defendant's remaining assignments of error and find them without merit. Defendant received, in our opinion, a fair trial free from prejudicial error.

No error.

Judges CLARK and ERWIN concur.